## SUPREME COURT.

JESSE N. BOLLES, receiver, agt. JOHN A. DUFF and others.

It is a general rule of courts of equity that, when anything is due to a *mortgagee in possession,* he will not be deprived of such possession by any appointment of a *receiver.*

And particularly is this so when the mortgagee is responsible and is able to account for and pay any excess of rents and profits, after the payment of his debt, or will give security to do so.

But where it appears that the mortgagee is irresponsible, or that the rents and profits would be lost or would be in danger of loss. or that the mortgagee was committing waste upon or materially injuring the premises, a different rule would prevail, and a receiver would be appointed.

Where an interlocutory decree of a judge involves an adjudication that the mortgagee in possession, who is also appointed receiver, is entitled to remain in possession as such mortgagee until the coming in of a referee's report; although such adjudication would not prevent the court from removing him from his office of receiver, for proper cause shown, at any time before the coming in of such report, yet, if not as a matter *res adjudicata,* as matter of judicial decorum, it precludes his removal by any other judge of the court, for any cause existing *before such interlocutory order,* than the judge by whom such order was made

*New York Special Term, November,* 1867.
*Before* E. DARWIN SMITH, *Justice.*

MOTION upon order to show cause why the defendant Duff should not be removed as receiver, &c.

B. C. THAYER *and*
DAVID DUDLEY FIELD, *for plaintiff.*
BROWN, HALL & VANDERPOEL, *and*
JOHN GRAHAM, *for defendant.*

E. DARWIN SMITH, J.  From the papers presented upon this motion, it appears that on the 29th day of June, 1866, an interlocutory decree was made in this cause by Justice POTTER, in and by which it was adjudged that the defendant Duff, at the time he acquired title and took possession of the premises in controversy in this action, was and is a mortgagee of said property, in possession, and was bound to account for the rents and profits received by him; and it was

referred to a referee named in said decree to take and state an account between the said parties, from the 22d day of January, 1863, to the date of his report, and in which the defendant Duff be allowed the money paid by him for said property, with interest thereon, and all taxes, assessments, insurance, necessary and reasonable repairs, with interest, and the cost of and interest on all such improvements as have added permanent value to the property and have increased the rents and income thereof, and an allowance of $1,000 per annum for his energy and efficient management of the property, and that said referee make annual rests, for the purpose of computing interest on the balance. The question of costs, and all other questions not expressly settled in said decree and in the conclusions of law and fact therein, were reserved until the coming in of the referee's report. In pursuance of this decree, the referee named therein proceeded to take and state the account of the defendant Duff, as therein directed, who had presented his accounts against the said property, in which he claimed a balance due him of about $52,000 over all receipts from the rents and profits of the same.

It further appears that after said Duff had so rendered his accounts before said referee, and while the investigation of the same was going on before him, application was made to the court, upon affidavits asserting that the said defendant was overpaid, and that he had made false charges against the property, and was guilty of fraud and other misconduct in relation thereto, for the appointment of a receiver of the rents and profits of said property, and to remove the said Duff from all trust or control over the same.

This application came on to be heard at chambers, before Judge LEONARD, in July last, and was heard by him upon very voluminous affidavits and other papers, and finally resulted in a decision and an order, made on the 29th of July last, by the said judge, in and by which he appointed said Duff receiver of said property, and also further ordered that

the plaintiff may have leave to apply to change the receiver for cause, on coming in of the referee's report, and that the receiver by this order appointed do make semi-annual reports of his proceedings, &c.

This motion to remove said receiver. is the next proceeding in court in the cause, and is made before the coming in of the referee's report, and while the proceeding for the accounting is still pending before the said referee, and while an appeal is pending also from this order of Judge LEONARD appointing such receiver. It is apparent from the decree made by Judge POTTER, and this view is confirmed by letter from him, produced and read on the hearing, that he properly abstained from appointing a receiver in the action, among other reasons, on the ground that Duff was a mortgagee in possession, and was, as such, being abundantly responsible, entitled to remain in possession until his debt was paid. It is unquestionably, as a general rule, the settled doctrine of the courts of equity that when anything is due to a mortgagee in possession he will not be deprived of such possession by any appointment of a receiver. (*Edwards on Receivers*, 53; 1 *Hilliard on Mort.* 441; 13 *Vesey*, 377; 16 *Id.* 469; *Trentor* agt. *Woodruff*, 2 *Green.* 210.)

In *Rew* agt. *Moore* (2 *Jac. & Walker*, 552). Lord ELDON said: "Considering the question as between mortgagor and "mortgagee, I do not know of any instance where a mort- "gagee in possession has said by answer that anything was "due him, that the court has tried upon affidavits against "the answer whether that was due or not. In *Brickford* "case (*Janels* agt. *Brickford*, 13 *Vesey*, 377), I said that if "he would swear that sixpence was due, I would not appoint "a receiver." In *Brewer* agt. *Sewell* (1 *Jac. & Wal.* 647), Lord ELDON also said: "I know no instance where the court "has appointed a receiver against a mortgagee in possession, "unless the parties making the application would pay him "off according to his claims as stated by himself." And particularly is this so when the mortgagee is responsible and is

able to account for and pay any excess of rents and profits after the payment of his debt, or will give security to do so. (*Patten* agt. *The Accessory Transit Co.*, 4 *Abb.* 237; 19 *Vesey*, 155; 8 *Paige*, 565; 2 *Green.* 214.) But if it appeared that the mortgagee was irresponsible, or that the rents and profits would be lost or would be in danger of loss, or that the mortgagee was committing waste upon or .materially injuring the premises, a different rule would prevail, and a receiver would be appointed. (2 *Green.* 214; 15 *Eng. Law and Eq.* 133; 13 *Vesey*, 105; 16 *Id.* 59.) The power of the court in such case is, I think, undoubted, and the question is one addressed at all times to its sound judicial discretion, in view of the particular facts and circumstances of the case presented. In refusing to appoint a receiver on the application to Judge LEONARD, the learned judge acted doubtless upon the same principle, and that the court should not decide upon affidavits whether the mortgagee was paid, if he was responsible, as the order made by him, as above stated, expressly allowed a motion to be made, on the coming in of the referee's report, to remove the said receiver, *for cause.* The interlocutory decree made by Judge POTTER, and the said decision and order of Judge LEONARD, therefore, it seems to me, both involve an adjudication that Duff, as a mortgagee in possession, was and is entitled to remain in possession as such mortgagee until the coming in of the referee's report, and a direction to that effect. But this adjudication clearly would not preclude the court from removing him from his office of receiver, for proper cause shown, at any time before the coming in of such report; but it does, I think, if not as matter *res adjudicata,* as matter of judicial decorum, preclude his removal by any other judge of this court, for any cause existing before the order made by Judge LEONARD, on the 25th of July, 1867.

Under and by virtue of that order he became a receiver of this court, and is therefore clearly subject to its control, like any other receiver, and is removable for subsequent mis-

conduct, neglect or breach of duty. Upon the facts appearing on this motion, I do not see that Mr. Duff has done any act in his capacity of receiver at all exceptional, since his appointment, in July last. The chief ground for his removal presented and urged on the argument of the motion was his giving a lease of the Olympic Theatre to Hayes, his son-in-law, for the rent of $15,000 a year, when he was offered by Grover, the outgoing tenant, for the said premises, the sum of $25,000, and might have secured that sum for the estate. The other allegations made on the argument of mismanagement of the estate, fraudulent charges before the referee, and other misconduct, all relate to facts confessedly well known, fully investigated, debated and considered before Judge LEONARD, and passed upon by him. The lease. in question, it is clearly established, was executed by Duff and delivered to Hayes on or about the 20th of April last. The fact of its existence, and its terms, was, I think, well known at or before the hearing before Judge LEONARD, although there is some conflict in the affidavits on this point. The stenographer's notes of the argument of counsel on the hearing before Judge LEONARD, and what was said by the judge, I think conclusively settles this question. Judge LEONARD is reported at the close of the argument as saying, "The court did not like Mr. Duff's action in making a lease of the premises, without previously obtaining permission of the court.. Therefore, while continuing Mr. Duff as receiver, the court would require that he give bonds in the sum of twenty-five thousand dollars for the faithful performance of his trust." One of the counsel for the plaintiff then said, "I suggest that the court increase the bond to $50,000, inasmuch as he had heard that Mr. Duff was speculating in Wall street." The court accordingly so directed. When this lease was executed, Duff clearly had authority to give such lease. He was then acting as trustee, and had not been appointed receiver. As receiver, he was authorized to give a lease for one year. After his appointment, he did nothing,

as receiver, in respect to such lease. It was an executed contract, and he could not revoke it. Hayes took possession under it, and for this act Duff is not responsible as for a new and affirmative act performed after his appointment as receiver. *If he rented the premises for $10,000, or any sum, in fraud* of the estate, less than he might by due diligence have obtained for the same, he is clearly responsible for the difference and loss, and it will be the duty of the referee, in taking the account, to charge him for such difference, *and for all he might have obtained for such rent by due and proper care and diligence.* While, therefore, I think, from the facts appearing on this motion, that the giving of said lease by Duff to his son-in-law for $15,000, when he was distinctly offered for the premises by the tenant then in possession the sum of $25,000, was highly improper and unjustifiable, yet, as this was done before he was appointed receiver, and he is abundantly responsible to respond for the loss or injury to the estate for such misconduct, and he was appointed such receiver when the fact of the giving of such lease was well known to the parties and the court, I do not see upon what principle I shall be justified in removing him from such receivership. The remedy, if there be any, for this error, if it were an error, lies with the general term, upon the appeal pending. But I do not think Mr. Duff should be allowed to renew such lease, or make any new lease, or to make any permanent improvements or repairs of the premises, at the expense of the estate, without special leave of the court for that purpose. An order to that effect, I think, would be proper upon this motion, and the plaintiff may take such an order, if he thinks proper; otherwise the motion must be denied, with ten dollars costs to abide the event.